**Jack E. HARLESS, Petitioner,**

v.

**Charles E. ANDERSON, Respondent.**

**No. 80–70905.**

United States District Court,
E. D. Michigan, S. D.

Jan. 8, 1981.

Jack Everett Harless, in pro. per.

Frank J. Kelley, Atty. Gen. by Sherwin Vine, Asst. Atty. Gen., Detroit, Mich., for respondent.

OPINION

GILMORE, District Judge.

Petitioner, Jack E. Harless, a prisoner at the State Prison of Southern Michigan, brings this application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On June 9, 1975, Petitioner was convicted by a Detroit Recorder's Court jury of two counts of first degree murder and was sentenced to life imprisonment. His conviction was affirmed by the Michigan Court of Appeals on October 19, 1977, *People v. Harless*, 78 Mich.App. 745, 261 N.W.2d 41 (1977). A letter request for appeal to the Michigan Supreme Court, pursuant to Administrative Order 1977-4,400 Mich. lxvii, was denied on June 21, 1979.

The issues presented in the instant petition are:

1. That the trial court improperly instructed the jury.

2. That justice did not prevail at the trial;

3. That there was insufficient evidence for the jury to find guilt beyond a reasonable doubt;

4. That the trial court failed to instruct the jury in an intelligent manner;

5. That the trial court erred in the admission of certain photographs.

The Respondent has filed a Motion to Dismiss or, in the alternative, a Motion for Summary Judgment.

As the first ground for relief, Petitioner alleges that the jury instructions concerning malice were in error in that they directed the jury to imply malice from the use of a weapon. The instruction stated:

"Malice is implied from the nature of the act which caused the death. Malice can be implied from using the weapon on another person. You are not obligated to reach the conclusion, *but you must imply malice if you find death was implied by the use of a gun against another.* The doing of a cruel act without excuse or justification." (Transcript, Vol. VI, at 91) (emphasis added)

In considering this issue, the Michigan Court of Appeals said, (78 Mich.App. at 748–750, 261 N.W.2d 41 (1979)):

"We do not believe in this case that the instruction given to the jury prevented their factual determination of whether malice existed or, consequently, whether manslaughter was a proper verdict.... They were not ordered to find malice simply because a deadly weapon was used.

"... By leaving to the jury the freedom to determine from the facts that malice would not necessarily be implied from the use of a deadly weapon, the trial court did not remove possible consideration of a manslaughter verdict from the jury...."

The Court therefore concluded that the instructions did not create a conclusive presumption of malice.

Petitioner's claim demands a precise differentiation between presumptions and inferences and an analysis of the effect of each on the prosecutor's burden of proving every element of the crime charged. *See* McCormick, *The Law of Evidence* 342–46 (2d Ed. 1972); 8 Wigmore, *Evidence* 2490–540 (3d Ed. 1940); Ashford & Risinger, *Presumptions, Assumptions and Due Process in Criminal Cases: A Theoretical Overview*, 79 Yale L.J. 165 (1969); Bohlen, *The Effect of Rebuttable Presumptions of Law*; and Stephan, *Defenses, Presumptions, and Burden of Proof in the Criminal Law*, 88 Yale L.J. (1979).

■ Inferences and presumptions are used to assist in ascertaining the presence of an element of a crime from the existence of one or more "evidentiary" or "basic" facts. The most common of these evidentiary devices is the permissive inference or permissive presumption. A permissive presumption allows the trier of fact to accept or reject the presumption, and does not shift the burden of proof. *County Court of Ulster County v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

■ A mandatory presumption requires a finding as to the existence of the ultimate fact upon proof of the basic fact, unless the trier of fact is otherwise persuaded by evidence rebutting the presumed connection between two facts. *See Turner v. United States*, 396 U.S. 398, 402–405, 90 S.Ct. 642, 644–646, 24 L.Ed.2d 610 (1970); *Morissette v. United States*, 342 U.S. 246, 274–75, 72 S.Ct. 240, 255–256, 96 L.Ed. 288 (1952). Such a mandatory presumption conflicts with the presumption of innocence and unconstitutionally shifts the burden of proof to the defendant. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *County Court of Ulster County v. Allen*, (supra).

The hallmarks of our system of criminal justice are the accused's right to a trial by jury, and the presumption of innocence until proven guilty. Both the right to trial by jury and the presumption of innocence have been repeatedly protected from erosion by operation of mandatory presumptions. In *Bollenbach v. United States*, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946), the accused was convicted of conspiracy to transport stolen securities in interstate commerce. The trial judge gave the following instruction to the jury:

"... I further charge you that possession of stolen property in another state than that in which it was stolen shortly after the theft raises a presumption that the possessor was the thief and transported stolen property in interstate commerce, but that such presumption is subject to explanation and must be considered with all the testimony in the case." (*Id.* at 609, 66 S.Ct. at 403)

In reversing *Bollenbach*'s conviction, the Court stated (pages 612, 613):

"The jury's questions, and particularly the last written inquiry in reply to which the untenable 'presumption' was given, clearly indicated that the jurors were confused concerning the relation of knowingly disposing of stolen securities after their interstate journey had ended to the charge of conspiring to transport such securities. Discharge of the jury's responsibility for drawing appropriate conclusions from the testimony depended on

discharge of the judge's responsibility to give the jury the required guidance by a lucid statement of the relevant legal criteria ... A conviction ought not to rest on an equivocal direction to the jury on a basic issue."

*Sandstrom*, supra, cites *Bollenbach* with approval, and further elaborates on the relationship between mandatory presumptions and the constitutional right to trial by jury and the "beyond a reasonable doubt" standard:

"As in *Morissette* and *United States Gypsum Co.*, a conclusive presumption in this case would 'conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime', and would 'invade [the] fact-finding function' which in a criminal case the law assigns solely to the jury. The instruction announced to David Sandstrom's jury may well have had exactly these consequences. Upon finding proof of one element of the crime (causing death), and of facts insufficient to establish the second (the voluntariness and 'ordinary consequences' of defendant's action), Sandstrom's jurors could reasonably have concluded that they were directed to find against defendant on the element of intent. The State was thus not forced to prove 'beyond a reasonable doubt ... every fact necessary to constitute the crime ... charged.' 397 U.S., at 364, 90 S.Ct. at 1073, and defendant was deprived of his constitutional rights as explicated in *Winship*." *Id.* 442 U.S. at 523, 99 S.Ct. at 2459.

In the case at bar, the instruction given could be interpreted as creating either a permissive inference or a mandatory presumption. The judge said: "You are not obligated to reach the conclusion," indicating merely a permissible inference, but followed this statement with the words, "you must imply malice if you find death was implied by the use of a gun against another", indicating a mandatory presumption. A juror could have interpreted the instruction in either manner.

The Supreme Court explained in *Sandstrom* (supra), at page 519, that such an instruction is invalid if a jury could have interpreted it as mandatory:

"However, the fact that a reasonable juror could have given the presumption conclusive or persuasion-shifting effect means that we cannot discount the possibility that Sandstrom's jurors actually did proceed upon one or the other of these latter interpretations. And that means that unless these kinds of presumptions are constitutional, the instruction cannot be adjudged valid."

■ This Court simply cannot understand how the Michigan Court of Appeals could determine that the jury was given the freedom to determine from the facts that malice would not necessarily be implied from the use of a deadly weapon. At one point the instruction said that, but immediately after that, the instruction said that *malice must be implied* if a gun was used against another.

This Court must therefore conclude that the instruction given could have caused the jury to use an unconstitutional conclusive presumption of malice from the use of a weapon.

The Respondent suggests that review of this issue should be barred by Petitioner's failure to object to the instructions. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In that case, the Supreme Court required compliance with a state "contemporaneous objection" rule, absent a showing of "cause" and "prejudice" justifying federal habeas corpus review.

The *Wainwright* rule, however is inapplicable to the case at bar. Though Michigan does have a "contemporaneous objection" rule, GCR (1963) 516.2, this rule does not apply if there has been manifest injustice. In fact, the Michigan Supreme Court did not apply the rule in *People v. Wright*, 408 Mich. 1, 30 n.13, 289 N.W.2d 1 (1980), a case involving burden-shifting jury instructions, noting that the

"... failure to object should not be made a basis for relief in these cases.

General instructions of this kind may be part of a judge's customary litany and not the subject of conference discussion with counsel before being given. Unless counsel has become conversant with the judge's customary instruction, the instruction may be given before he has an opportunity to object. Once given, the damage may be irremediable because the judge must repeat the instruction to identify it and then caution the jury to disregard it. Many defense lawyers may regard 'cure' by a corrected instruction as no better and perhaps worse than the injury."

■ If the state itself does not require a contemporaneous objection to preserve the issue on appeal, the federal court will not require such an objection. As the Sixth Circuit stated in *Hockenbury v. Sowders*, 620 F.2d 111, 115 (CA6 1980):

"... the failure to comply with a state's contemporaneous objection requirement cannot be deferred to as a separate and independent procedural ground precluding federal review if the state itself did not preclude direct review on the basis of that requirement."

■ In addition, in a recent *en banc* opinion, *Issac v. Engle,* Docket No. 78–3488 (filed December 12, 1980), a similar case involving unconstitutional jury instructions, the Sixth Circuit concluded that there was "cause" and "prejudice" justifying non-compliance with a state contemporaneous objection rule. Thus, this Court is not precluded from considering the constitutional claim.

Even though the instruction at issue is unconstitutional, this Court must, as required by the Sixth Circuit in *Krzeminski v. Perini*, 614 F.2d 121 (CA6 1980), apply the harmless error analysis to determine if the unconstitutional jury instruction calls for a new trial. The *Krzeminski* court analyzed harmless error under the test prescribed by the Supreme Court in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), asking whether the error was "harmless beyond a reasonable doubt."

■ This Court cannot conclude that the instruction in the instant case had no effect on the jury's deliberations. Reliance on a presumption may well have made the jury's decision easier, particularly where the evidence on the issue of malice was contradictory. It is possible that the jury would have considered the Petitioner's actions to have been sufficiently provoked to negate the existence of malice, and merit a verdict of manslaughter. This possibility precludes a finding that the error was harmless beyond a reasonable doubt.

■ Defendant also argues that the petitioner has not exhausted his state remedies. The Court does not agree. Petitioner's conviction was reviewed by the Court of Appeals and affirmed, and the Supreme Court of Michigan denied leave. Subsequently the defendant filed a motion for new trial with the trial court, which was denied. Petitioner has done all that is necessary to exhaust state remedies.

The Court need not consider other issues raised in this petition because the unconstitutional instruction requires the issuance of the writ of habeas corpus.

For the reasons given, the application for a writ of habeas corpus is granted, unless Petitioner is retried by the State of Michigan within ninety (90) days of the date of this opinion. An appropriate order will issue.