ANDERSON, WARDEN *v.* HARLESS

No. 81–2066.  Decided November 1, 1982

PER CURIAM.

Respondent was convicted of two counts of first-degree murder and was sentenced to life imprisonment.  The Michigan Court of Appeals affirmed respondent's conviction, *Peo-*

*ple* v. *Harless,* 78 Mich. App. 745, 261 N. W. 2d 41 (1977), and the Michigan Supreme Court, on review of the record, denied respondent's request for relief.    App. to Pet. for Cert. 30a.

Respondent then filed a petition for writ of habeas corpus, pursuant to 28 U. S. C. § 2254, in the United States District Court for the Eastern District of Michigan.    He alleged, *inter alia,* that the trial court's instruction on "malice"— a crucial element in distinguishing between second-degree murder and manslaughter under Michigan law—was unconstitutional.[1]    In particular, respondent focused on the following language from the trial court's lengthy charge:

> "Malice is implied from the nature of the act which caused the death.    Malice can be implied from using the weapon on another person.    You are not obligated to reach the conclusion, but you must imply malice if you find death was implied *[sic]* by the use of a gun against another."    App. to Pet. for Cert. 59a.

Relying primarily on *Sandstrom* v. *Montana,* 442 U. S. 510 (1979), the District Court held that this instruction unconstitutionally shifted the burden of proof to respondent and was inconsistent with the presumption of innocence.    504 F. Supp. 1135 (1981).    The court also held that respondent had exhausted available state-court remedies, as required by 28 U. S. C. §§ 2254 (b) and (c), since his conviction had been reviewed by both the Michigan Court of Appeals and the Michigan Supreme Court.    The District Court ordered that the application for writ of habeas corpus be granted unless respondent was retried within 90 days.

The United States Court of Appeals for the Sixth Circuit affirmed.    664 F. 2d 610 (1982).    The court held that re-

---

[1] Respondent was convicted of *first*-degree murder, which requires proof not only of "malice" but also of premeditation.    For this reason, petitioner argues that any error in the trial court's definition of malice was harmless. In light of our disposition, we do not reach the issue.

spondent's claim had been properly exhausted in the state courts, because respondent had presented to the Michigan Court of Appeals the facts on which he based his federal claim and had argued that the malice instruction was "reversible error." See *People* v. *Harless, supra,* at 748, 261 N. W. 2d, at 43. The court also emphasized that respondent, in his brief to the Michigan Court of Appeals, had cited *People* v. *Martin,* 392 Mich. 553, 221 N. W. 2d 336 (1974)—a decision predicated solely on state law in which no federal issues were decided, but in which the defendant had argued broadly that failure to properly instruct a jury violates the Sixth and Fourteenth Amendments. In the view of the United States Court of Appeals, respondent's assertion before the Michigan Court of Appeals that the trial court's malice instruction was erroneous, coupled with his citation of *People* v. *Martin, supra,* provided the Michigan courts with sufficient opportunity to consider the issue encompassed by respondent's subsequent federal habeas petition.

We reverse. In *Picard* v. *Connor,* 404 U. S. 270 (1971), we made clear that 28 U. S. C. § 2254 requires a federal habeas petitioner to provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim. *Id.,* at 276–277. It is not enough that all the facts necessary to support the federal claim were before the state courts, *id.,* at 277, or that a somewhat similar state-law claim was made. See, *e. g., Gayle* v. *LeFevre,* 613 F. 2d 21 (CA2 1980); *Paullet* v. *Howard,* 634 F. 2d 117, 119–120 (CA3 1980); *Wilks* v. *Israel,* 627 F. 2d 32, 37–38 (CA7), cert. denied, 449 U. S. 1086 (1980); *Conner* v. *Auger,* 595 F. 2d 407, 413 (CA8), cert. denied, 444 U. S. 851 (1979). In addition, the habeas petitioner must have "fairly presented" to the state courts the "substance" of his federal habeas corpus claim. *Picard, supra,* at 275, 277–278. Cf. *Rose* v. *Lundy,* 455 U. S. 509, 518 (1982).

In this case respondent argued on appeal that the trial court's instruction on the element of malice was "erroneous." He offered no support for this conclusion other than a citation to, and three excerpts from, *People* v. *Martin, supra*—a case which held that, under *Michigan* law, malice should not be implied from the fact that a weapon is used. See App. to Pet. for Cert. 47a–49a, 51a–53a.[2] Not surprisingly, the Michigan Court of Appeals interpreted respondent's claim as being predicated on the state-law rule of *Martin*, and analyzed it accordingly. 78 Mich. App., at 748–750, 261 N. W. 2d, at 43.

The United States Court of Appeals concluded that "the due process ramifications" of respondent's argument to the Michigan court "were self-evident," and that respondent's "reliance on *Martin* was sufficient to present the state courts with the substance of his due process challenge to the malice instruction for habeas exhaustion purposes." 664 F. 2d, at 612. We disagree. The District Court based its grant of habeas relief in this case on the doctrine that certain sorts of "mandatory presumptions" may undermine the prosecution's burden to prove guilt beyond a reasonable doubt and thus deprive a criminal defendant of due process. See *Sandstrom, supra; In re Winship*, 397 U. S. 358 (1970). The Court of Appeals affirmed on the same rationale. However, it is plain from the record that this constitutional argument was never presented to, or considered by, the Michigan courts. Nor is this claim even the same as the constitutional claim advanced in *Martin*—the defendant there asserted a broad federal due process right to jury instructions that "properly explain" state law, 392 Mich., at 558, 221 N. W. 2d, at 339, and did not rely on the more particular analysis developed in cases such as *Sandstrom, supra*.[3]

---

[2] Respondent was represented by counsel on appeal.

[3] We doubt that a defendant's citation to a state-court decision predicated solely on state law ordinarily will be sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in

Since it appears that respondent is still free to present his *Sandstrom* claim to the Michigan Court of Appeals, see *People* v. *Berry,* 10 Mich. App. 469, 474–475, 157 N. W. 2d 310, 312–313 (1968), we conclude that he has not exhausted his available state-court remedies as required by 28 U. S. C. § 2254. Accordingly, the petition for certiorari and respondent's motion for leave to proceed *in forma pauperis* are granted, the judgment of the United States Court of Appeals for the Sixth Circuit is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

Few issues consume as much of the scarce time of federal judges as the question whether a state prisoner adequately exhausted his state remedies before filing a petition for a federal writ of habeas corpus. Distressingly, the Court seems oblivious of this fact and takes action in this case that can only exacerbate that problem.

On the merits the question presented by this case is whether a somewhat garbled jury instruction contained a mandatory presumption that required a finding of malice or merely a permissive inference that allowed the jury to make such a finding.[1] The parties seem to agree that if the in-

---

the *cited* case advanced a federal claim. However, it is clear that such a citation is insufficient when, as here, the federal claim asserted in the cited case is not even the same as the federal claim on which federal habeas relief is sought. See *Picard* v. *Connor,* 404 U. S. 270, 276 (1971).

[1] The instruction stated:

"Members of the jury, the term malice is a technical term which has to do with the doing of a cruel act against another human being without excuse or justification. The doing of a cruel act against another human being without excuse or justification. Malice is implied from the nature of the act which caused the death. Malice can be implied from using the weapon on another person. You are not obligated to reach the conclusion, but you

struction is considered mandatory, the respondent's conviction must be set aside under principles that are well settled in Michigan[2] and in the federal courts.[3]

The Michigan Court of Appeals rejected respondent's construction of the jury instruction and therefore affirmed his conviction. After the Supreme Court of Michigan denied leave to appeal and after the state trial court denied a subsequent motion for a new trial, respondent commenced this federal habeas corpus proceeding.

The Federal District Court carefully analyzed the difference between a permissive inference and a mandatory presumption and concluded that the Michigan Court of Appeals' construction of the jury instruction was simply untenable. 504 F. Supp. 1135, 1138 (1981). It also considered and rejected the argument that the respondent had not exhausted his state remedies. *Id.*, at 1139.

On appeal, the Court of Appeals for the Sixth Circuit affirmed, 664 F. 2d 610 (1982). That court first carefully considered the Warden's contention that respondent's state remedies had not been exhausted because his federal claim had not been fairly presented to the state courts. After explaining in some detail why the federal claim necessarily presented the very question that the state court had already resolved against the respondent, the Court of Appeals concluded "that the Michigan courts had a fair opportunity to consider the issue encompassed by Harless' habeas corpus petition." *Id.*, at 612. Thereafter, the Court of Appeals reviewed and upheld the District Court's holding on the merits.

I agree with the sensible approach to the exhaustion issue that was followed by the District Court and the Court of Ap-

---

must imply malice if you find death was implied by the use of a gun against another." App. to Pet. for Cert. 59a.

[2] See *People* v. *Martin*, 392 Mich. 553, 221 N. W. 2d 336 (1974).

[3] Compare *Ulster County Court* v. *Allen*, 442 U. S. 140, with *Sandstrom* v. *Montana*, 442 U. S. 510.

peals.[4]  I also believe that approach was entirely faithful to *Picard* v. *Connor*, 404 U. S. 270, which requires only that the "substance" of the federal claim (not the form) be "fairly

---

[4] Because this Court's description of the Court of Appeals' treatment of the exhaustion issue is so abbreviated it seems appropriate to quote in full the relevant portion of that opinion:

"In our view, Harless adequately exhausted available state remedies for purposes of 28 U. S. C. §§ 2254(b) and (c).  The respondent concedes that Harless presented to the state appellate courts all the facts on which he based his federal constitutional claim.  Respondent contends, however, that the state courts had no opportunity to correct the constitutional error, because Harless did not explicitly complain to the state courts that the malice instruction denied him due process.

"Although we do not have before us Harless' state appellate papers, we learn from the Michigan Court of Appeals opinion the substance of Harless' contention before that court: 'The trial court committed *reversible error* by instructing the jury *incorrectly* on the implication [sic] of malice that might be drawn from defendant's use of a deadly weapon, *the effect of which was to remove the possible finding of manslaughter*.'  *People* v. *Harless*, 261 N. W. 2d 41, 43 (1977) (emphasis added).  At Harless' trial the court gave the following definition of malice to the jury:

"'Malice is implied from the nature of the act which caused the death.  Malice can be implied from using the weapon on another person.  You are not obligated to reach the conclusion, *but you must imply malice if you find death was implied [sic] by the use of a gun against another'* (emphasis added).

"Harless claimed on appeal that this instruction was reversible error under *People* v. *Martin*, 392 Mich. 553, 221 N. W. 2d 336 (1974), a case holding that the law does not imply malice from the use of a deadly weapon.  In *Martin*, appellant challenged his murder conviction on numerous state and constitutional grounds.  The gist of Martin's appeal was that he was denied a fair trial because certain instructions failed to provide the jury with sufficient understanding of the elements of the crimes charged, to enable them to perceive the crucial distinctions between first and second degree murder, and manslaughter.  In particular, Martin challenged a malice instruction in which the jury was informed that the law implies malice from the use of a deadly weapon.  The Court of Appeals ultimately decided as a matter of state law that the malice instruction 'erroneously categorized [the issue of malice] as a presumption of law rather than a permissible inference.'  221 N. W. 2d, at 341.  However, Martin's constitutional argument was broadly phrased: failure to explain the law properly to a jury

presented" to the state courts.[5]   In this case the only argu-
able justification for dismissing the petition for failure to
exhaust is a possibility that the state court might decide the

---

through adequate instructions abridges the due process right to a fair trial.
The Court of Appeals neither rejected nor refined this constitutional argu-
ment.   Rather, it seems to have accepted it tacitly, for in response to de-
fendant's argument that his Sixth and Fourteenth Amendment rights to a
fair trial had been abridged by an inadequate manslaughter instruction, the
court stated that 'an erroneous or misleading charge denies the defendant
the right to have a properly instructed jury pass upon the evidence.' *Id.*,
at 341.   Although it did not specifically label this a *federal* right, the court
clearly felt that a properly instructed jury is a prerequisite to a fair trial.
   "In our view, Harless' reliance on *Martin* was sufficient to present the
state courts with the substance of his due process challenge to the malice
instruction for habeas exhaustion purposes.   The substance of Harless'
state appeal, although unartfully phrased, sufficiently asked the state court
to consider that the incorrect malice instruction denied Harless a fair jury
trial by effectively eliminating the possibility of a manslaughter verdict
from the jury's consideration.   In our view, the due process ramifications
were self-evident.   Under *Picard* v. *Connor*, 404 U. S. 270 . . . (1971), a
habeas petitioner need not label his state claim as federal or constitutional.
Given the elasticity of the due process concept, we are convinced that the
Michigan courts had a fair opportunity to consider the issue encompassed
by Harless' habeas corpus petition."   664 F. 2d, at 611–612.
   [5] In *Picard*, the habeas petitioner had argued in the Massachusetts
courts that his indictment had been contrary to Massachusetts law and
that, if the procedures used in his case had been in accord with Massachu-
setts law, then those procedures could not be approved without reference
to whether the Fifth Amendment's requirement of a grand jury indictment
applied to the States through incorporation in the Fourteenth Amendment.
404 U. S., at 277.   This Court held that such an argument did not give the
State a fair opportunity to consider the proposition that its treatment of
the petitioner denied him equal protection, in view of the Commonwealth's
otherwise universal commitment to grand jury indictments in felony cases.
   In this case, the federal courts ordered habeas relief on the theory that
the "operative effect" of the instruction quoted above was to cause the jury
to use an unconstitutional mandatory presumption of malice.   It held that
the instruction was therefore inconsistent with *Sandstrom, supra.*   664
F. 2d, at 612.   Accord, *ante*, at 7.   In state court, the defendant had ar-
gued that the instruction was inconsistent with *People* v. *Martin, supra*,
because *Martin* had struck down an instruction that caused the jury to use

instruction issue differently if phrased in terms of *Sandstrom* v. *Montana*, 442 U. S. 510, rather than in terms of *People* v. *Martin*, 392 Mich. 553, 221 N. W. 2d 336 (1974). See n. 4, *supra.* That possibility is virtually nonexistent. The Court apparently perceives this case as a simple application of *Picard;* I think it can only be explained as an expansion of *Picard.* Such an expansion should be accompanied by a more careful analysis than the Court provides in this case, and it should not be undertaken without full briefing and argument.

But even if I shared the Court's analysis of the exhaustion question in this particular case, I would nevertheless take issue with its decision to grant certiorari for the sole purpose of correcting what it considers to be a technical, procedural error. It is not appropriate for this Court to expend its scarce resources crafting opinions that correct technical errors in cases of only local importance where the correction in no way promotes the development of the law.[6]

If the Court of Appeals was correct in its appraisal of the merits, the respondent should be given a prompt retrial. If that court was incorrect on the merits, nothing will be gained by requiring the respondent to present his claim to three

---

a mandatory presumption of malice. See *People* v. *Harless*, 78 Mich. App. 745, 749, 261 N. W. 2d 41, 43 (1977). The substance of the argument— that the instruction deprived him of fair jury consideration because it created a mandatory presumption of malice—is the same.

[6] In many respects this case is merely a sequel to *Board of Education of Rogers, Ark.* v. *McCluskey*, 458 U. S. 966. In my dissent in that case, I observed:

"As JUSTICE REHNQUIST has reminded us, in 'our zeal to provide "equal justice under law," we must never forget that this Court is not a forum for the correction of errors.' *Boag* v. *MacDougall*, 454 U. S. 364, 367–368 (1982) (dissenting opinion). 'To remain effective, the Supreme Court must continue to decide only those cases which present questions whose resolution will have immediate importance far beyond the particular facts and parties involved.' This case illustrates how ineffectively the Court is supervising its discretionary docket." *Id.*, at 971 (footnote omitted).

more sets of Michigan judges and two more sets of federal judges before this Court decides whether the substantive error merits our review.   Cf. *Rose* v. *Lundy*, 455 U. S. 509, 545 (STEVENS, J., dissenting).

I respectfully dissent.